at all. Oral argument not to exceed 15 minutes per side. Mr. Belsley for the appellate. May it please the court. I'm Greg Belsley appearing this morning on behalf of the appellate David Jones. With the court's permission I'd like to reserve three minutes of my time for rebuttal. The issue in this case is what specificity of allegations is required to be afforded a plaintiff the right to pursue discovery in support of his claims. In our original complaint in this case we alleged that Mr. Jones is Mr. Jones in the affidavit for the search warrant was it was indicated that he was not a suspect. That nevertheless once the warrant was executed at that time he was arrested at his electronic devices were seized. And they remained in the possession of the defendants and were not tested until he had been in jail for over a year at which time the electronic devices exonerated him. And he was released from jail and the charges were dismissed soon thereafter. When you say it exonerated him is that completely accurate in the sense that the forensic examination showed there was nothing on his computer but it did it show that it could not have been deleted prior to their seizure. Your Honor, my understanding of the forensic analysis that was conducted by Mr. Jones' expert indicated that it wasn't on his computer and that there was no indication that anything had ever been on his computer. Now there may be some very significant details, there may be some real weeds there but it's sufficient to say that upon that discovery the defendants abandoned their cases and the charges were dismissed. Is that report in whole in the record somewhere? No sir, not yet. We did not attach that to our complaint. It definitely was enough to get them to drop the case. That's correct, Your Honor. Now when the motion to dismiss was filed on the pleadings alleging that the grand jury indictment established probable cause, we sought to amend our complaint to allege specifically not just omissions generally before the grand jury but we specified what those omissions were and those were material. That was that the defendants had seized the electronic devices which would have been the exonerating evidence and had not tested them. That's like, for example, as you wrote in Judge Boggs in the Webb case, it's like somebody going to a grand jury and saying he's the suspect without acknowledging that there's a photograph of the suspect and it doesn't resemble him at all. That's like saying somebody's a murderer but we've got the murder weapon and we haven't tested it for fingerprints. When it comes to this type of electronic data and information, this new world, these IP addresses are routinely hacked. We allege that the defendants knew that. That was certainly something that was discussed and that the conclusive evidence in their possession, the electronic devices, should have been tested. Judge White, you'll remember in the Hoxer case that you wrote, it's an unpublished opinion but it's the only opinion I could find that had malicious prosecution and IP address. In that case, they seized the electronic devices. They tested them. Forensic analysis tested them. There was no evidence there. There were still some weeds as we discussed earlier but then they took it to the grand jury. The grand jury returned an indictment and only then were the Hoxers arrested. In that case, it became a question then of why would the jury do that under that evidence but here we're alleging unlawful arrest, unlawful prosecution, unlawful incarceration from the get-go. We're alleging that in the absence of a forensic analysis of what should have been understood to be exculpatory if not exonerating. Unlawful arrest from the get-go. Aren't there cases that say that tracing pornography to an IP address is enough for probable cause? There are cases that say that, Judge. I disagree with them. This case is a prime example of why. It's precisely because these are so routinely hacked by the perpetrators in order to hide their identity. I admit there are cases out there and that may be a difficulty but as we alleged in our amended complaint, even after Mr. Jones' arrest, this case should not have been even brought to a grand jury without a testing of those devices. So we believe we have alleged our complaint was sufficient. What do you do about the line of cases that say that you don't have to present exculpatory evidence to a grand jury? That that sort of turns it into a trial? Martin V. Marr is a good example. Where the complaint of the plaintiff was, well, my family gave me an alibi and you didn't present that to the grand jury. Well, there's an issue of fact. Alibis can be controverted by other evidence. But here, Judge, I think we're talking about a uniquely exonerating type of evidence, like a photograph of the offender that doesn't match the suspect. Like the murder weapon with fingerprints on it, not those of the suspect. We've got electronic devices here that had they been tested, and this is conclusive, exonerative evidence, at least potentially. And I think we certainly want to encourage our law enforcement officers to do that before they take the case to the grand jury, as they did in the Hoxha case. So do we have any information about why they do it that way? Why they just go to the grand jury, get the indictment, and wait for trial to check to see if there's any evidence? Judge, that's the central question. That's going to be the first 30 minutes of any deposition of Defendant Murray that I take in this case, which is why did you take this to the grand jury without this evidence? But why did the judge say that you never asked for discovery? I thought that was one of the reasons the judge didn't allow your amended complaint. I seem to read someplace that the judge said, well, it's been I don't know how many months, and you've never asked for any discovery. Your Honor, I don't recall that specifically. There may have been a ruling by the judge that I hadn't filed an affidavit saying that I needed more time or needed discovery to do this case. That argument, I think, was sufficiently made because in our response to the motion to dismiss, nonetheless, because we were saying that our allegations were certainly sufficient to let us proceed with discovery in support of our claims, and that this then could be undertaken on motion for summary judgment. But this motion to dismiss was filed after our complaint, and we argued on the pleadings from that point. The judge, Judge Reeves, even refused to consider the affidavit that was submitted in support of the motion to dismiss. He considered this solely on the pleadings and simply said I didn't have enough. So now what do you do about the Renberg case? I think it's Renberg or Rayberg. Reberg. Reberg. Well, this is not a case that turns on which we are simply complaining about the grand jury proceedings. Again, to go back to the Hoxer case and how this differs, the defendants at Hoxer conducted a forensic analysis, and then they took the case to a grand jury. The question then became what was it that was told to the grand jury that led them to return an indictment despite what appeared to be exculpatory evidence from the forensic analysis? Under those circumstances, the court went to a Rayberg analysis. We're not concentrating solely on the grand jury testimony. All we're doing here is our challenge at this stage is to rebut, is to overcome the presumption of probable cause that arises from the grand jury's indictment. And we think we have alleged omissions of material fact that permit us at least to undertake discovery to prove those claims, and that Rayberg doesn't come into it because we have a much broader claim here concerning. If the discovery revealed, for whatever reason, that only the grand jury testimony was evil, let's say, then you would fail under Reberg. But you think you could discover some additional matters if you got to pursue them? Yes, sir. With that, I'll conclude my open hour. Oh, one other thing. What about, do you make any distinctions between the federal claim and the state claim? Under the state law, Judge, the test there, they talk in terms of that the jury's indictment is a rebuttable presumption and that the plaintiff should be permitted to rebut it. I think it's arguably a looser claim, but not so significantly looser that there's a material difference between the federal and the state test that I can point to. So, in other words, if you lose under the federal test, you also lose under the state? Are you conceding that? I'm not prepared to concede that, Your Honor. I think we've argued in our brief that the statement of the case is afford a more lax interpretation and afford more freedom. And so we would maintain that even if the court believes we can't go forward on the federal claim, we should at least be allowed to attempt to make our state claim with discovery. Thank you, Your Honors. May it please the court. I'm Robert Stills. I'm here with Barry Stills on behalf of the Applelees in the case, Clark County, Kentucky, Sheriff Burl Perdue and Detective Lee Murray. I want to start at kind of an ending point in opposing counsel's argument on the Reburg case. Because I think the issue in our case is, have sufficient facts been pled in either the complaint or the proposed amended complaint to survive a motion to dismiss? And the only facts that have been pled, as Your Honors are aware, whenever there is an indictment by a grand jury, that changes the calculus of the case. It creates an additional hurdle that must be overcome because it requires evidence in the Sixth Circuit or under the federal malicious prosecution claim that the defendant have knowingly presented false testimony to the grand jury or have been reckless in that testimony. In this case, Mr. Jones attempted to allege facts about evidence presented in testimony to the grand jury or that wasn't presented to the grand jury that I think creates a Reburg problem because that testimony is subject to absolute immunity. And I don't know how none of the allegations had anything to do with anything that happened outside of the grand jury context. Well, isn't, I mean, in the discussion it may be inferential, but in one sense the gravamen, the real gravamen of their empathetic complaint is that you had the evidence in your hands to show that they didn't do it and you refused or declined to look at it. And I might ask you in that context, is it clear that they would not have been able to get at the computers themselves? That is, you had custody? No, I don't think that's clear, certainly not clear in the record at all. In fact, they were. How did they finally get it, do you know? He was represented by counsel in that proceeding who ultimately requested the test and a year later that was done. Under a criminal discovery rule or do you know how they were able to do that or they just finally asked for it politely? Frankly, I don't know in this case exactly how that occurred. But under the Reburg and then our case in Sanders, at least as I read them, officers might do something prior to a grand jury that was so heinous that it would constitute malicious prosecution. Isn't that fair? That's fair, but nothing like that has been alleged here. Everything that is alleged here is about what happened in the grand jury room. So you're saying that my inference just isn't in the allegations. That is, my inference that the evil was you had the evidence, all you had to do was look at it and you refused to look at it. Do they not allege that? They allege the grand jury was not told that the evidence had not been tested. So you're saying they simply don't make the freestanding complaint that it was malicious not to look at the computer and see that there's no pornography on it. I think that's accurate. I think it's also important to note that I think the claim that this was like DNA evidence in our hands is vastly overstated. As the court understands, after a forensic examination, the absence of electronic evidence on a device seized does not necessarily mean that the crime did not occur. Although it certainly turned out to be strong enough that they dropped your client's problem. Agreed. In certain cases it might be a hurdle that the prosecution, for whatever reason, there's also not evidence in this record to say why exactly the prosecution decided not to proceed with the claim. It was dismissed. Do we even know whether the prosecutor knew that the computers hadn't been checked yet? I don't believe that evidence is in the record as to whether the prosecutor had that understanding or not. So, I mean, isn't that a possible fact to be developed? That if he just, you know, went to the prosecutor and said, okay, this guy downloaded, we have evidence that this was downloaded to his IP address and left out, but we haven't checked the computer yet. Or he says, it looks like this is the IP address, so this is what happened. We got this and then we went over there and we took his stuff. Well, and to your point, you asked a question earlier whether you saw something in the record about discovery and the failure to conduct discovery. I think that was the discussion. Initially, the defendants, the appellees in the case, submitted an affidavit from Detective Murray and asked to convert this to a Rule 56 motion. In its opinion, the district court decided not to convert this to a Rule 56 motion but engaged in a discussion that it could have and essentially said that there was adequate time and notice to the plaintiff, to the appellant in this case, adequate time and notice that it could be converted to allow him to have considered that affidavit. That affidavit had additional information in it, including that Mr. Jones made a statement that he lived there alone. His network was password protected. He was there at the time that the material was downloaded. Additionally, the plaintiff has never made an effort, Mr. Jones has never made an effort to secure the grand jury testimony here. That is available to him. I believe, as this court has noted in the past, in the Bickerstaff case, which is a Sixth Circuit case, the plaintiff's failure to request and make allegations regarding what was actually testified to the grand jury can be a significant failure at the pleading stage. Although after Reberg, it's questionable whether that exception still applies. Going back to the first thing you said about, was the judge's sort of procedural idea there that, even though it had not yet been converted to a summary judgment motion, he should have divined that it might be and filed a 56F, asking for more time for discovery? I believe so. That seems a little odd, doesn't it? There was a significant period of time between the filing of the affidavit and the request to convert to Rule 56 motion. But the request to convert was by you, wasn't it? Yes. Okay. But there was a significant lapse in time between that period. Why should he have divined that that was going to happen? I mean, you would think that when you moved to convert it, then he might have said, I need more time. But how long was it between your motion and the judge's ruling? Many months. Six or eight months, I believe, Your Honor. Okay. But he thinks he's facing a 12B6. Because your motion hasn't been granted. I understand that. But I think there was, he understood that an affidavit had been filed and a request had been made. And so if there was a belief that additional discovery was required to rebut or address any of those facts and the request to convert to Rule 56 motion, ample time was available and notice had been given that that might happen. And tell me again, what is the, if you're just looking at the complaint, what is the deficiency? So in the original complaint, the deficiency is there are no allegations that there was anything false or recklessly misleading that was submitted to the grand jury to overcome or to satisfy the exception of the Sixth Circuit that the grand jury conclusively determines the existence of probable cause. In the amended complaint, there was one paragraph added. And that one paragraph attempted to make three different or raise three different issues with the grand jury's finding of probable cause. I would note, just as an initial issue, there is an Iqbal and Twombly sufficiency of pleadings problem with that allegation. As you are well aware, the complaint must allege facts sufficient to nudge the line from conceivable to plausible. These allegations were stated on information and belief, which have not been sufficient to meet that pleading requirement as a matter of law. I think the Darvissette pharmaceutical litigation case at 756 F3rd 917 held that. The information and belief pleadings are not sufficient to cross that line. So there's a sufficiency of pleadings issue. But beyond that, even if you do consider the allegations, they actually do not overcome the conclusive effect of a grand jury's determination of probable cause. The first allegation was that the search warrant acknowledged that Mr. Jones was not a suspect. The search warrant at that time also mentioned that the IP address was associated with a particular location and the name Mr. Jones. But one of the things they wanted to find in the search warrant was who lived there. Detective Murray didn't even know at that point whether Mr. Jones lived at that address. They went in. They weren't just looking for proof of residency. They were looking for the devices. Right. I think they were looking for both. OK, so but they're looking for two things. It's like if they went in and they got proof of residency and then they get a warrant saying it was downloaded to this IP address and this is who lives there. I mean, you're saying that they wanted to find out who lived there. The warrant reflects some understanding that it's not cut and dry just because they have evidence that it was downloaded to that IP address, right? Sure, and it could be not cut and dry for a number of reasons, including that they don't even know yet who does live there. I mean, they don't know anything about the residents at that point. Well, they know that AT&T is sending bills and getting paid by that name at that address. Sure, but in terms of whether that person downloaded something, they don't know anything yet at that point. Let me ask you, this may be too deep in the weeds computer-wise, but the search warrant, which describes the IP address, also has a phone number and a modem MAC ID, which my understanding is that an IP address may come from different places, but the MAC ID is supposed to identify a particular piece of hardware. Do you know anything about that in this case, whether that was found on any of the computers? I do not. I haven't seen any indication of whether anyone discovered anything about the MAC ID address in this case. So, no, I do not have any additional facts on that. So I'm just thinking out loud now. I mean, well, never mind. Why did they do it that way? Why did they get the evidence, the hard evidence, and not look at it and simply charge? I mean, it's like going in and getting some substance in a house and charging before you test the substance and then telling the grand jury, oh, we went in and we collected a substance. And then 14 months later, you test it and, oh, sorry, it was some spices. Your Honor, I don't really agree that it is like testing a substance. They knew that the video had been downloaded. They knew that the crime had been associated with that IP address. The fact that the video was not found on, at the point that the electronic devices were tested, was not found on one of those devices, I don't think that indicates it's not conclusive evidence of innocence. There's many explanations that could establish that could still lead to the conclusion that that person did download those files and just, for whatever reason, when they were tested, they weren't there or it wasn't on those devices. And in addition, in this case, there were other facts to support the probable cause determination. Statements that Mr. Jones made to Detective Murray that were set forth in his affidavit submitted in the record here. What, that he was the only one there? Yes, that he was there that night, that his network had been password protected. That could lead a reasonable grand jury, I think, and or reasonable detective to the conclusion that there was probable cause to believe. If they did get discovery, and because here we have the pleading versus summary judgment issue, if they did get discovery and the testimony is, no, when we do one of these child porn things, we never test them. We always go to the grand jury right away because it might disprove it and we don't want that to happen. Would that give them some purchase for a malicious prosecution? Judge, I don't think so because the line of cases that talk about this exculpatory evidence issue with grand juries. I mean, I think there's really kind of two sets of cases that have been cited here. There are cases where there is evidence, there's clear evidence that the law enforcement officials were fabricating or knowingly lying to the grand jury to secure a probable cause determination. There's another line of cases where there are facts that either are not yet known or have not yet been developed at that point in time or maybe are known but are not believed to arise to the level of making the known facts or the known request that there is probable cause to be knowingly false. This case is much closer to the Martin V. Mauer case where, in that case, the detective did not tell the grand jury or was alleged not to have told the grand jury that there had been an eyewitness identification of the perpetrator of the burglary that didn't match the description of the suspect he was presenting to the grand jury. This is on the line of cases where the fact that exculpatory evidence was not presented to the grand jury did not overcome the conclusive probable cause establishment. So you're saying in Martin V. Mauer the holding was that they could go forward with the case, is that right? No, it affirmed the dismissal of the case. Couldn't, okay. Yes, Your Honor. And what if the prosecutor was deposed and said, Everything the officer said to me made me believe that they had found pornography on the computer and that's why we went ahead with the indictment. And I was personally pretty surprised to find out 14 months later that we didn't have the proof on the computer. Well, that allegation is not set forth anywhere in the complaint here, even on information of belief that the detective told anyone that the evidence was actually on the devices. I'm not saying that he told them, but what if that was the understanding of the prosecutor based on the omission? What if the practice is that you come in to my office once you have your case, which includes getting the warrant, looking at the computer, and if there's something else going on, you know, you tell me. Again, I don't think that takes us into the knowing falsehood realm required to overcome the conclusive presumption established by the grand jury indictment. I think we're still talking about the potential for exculpatory evidence there that hasn't been revealed to either, in your case, the prosecutor or then the grand jury who returns a probable cause determination. I think there's sort of a difference between, oh, it turns out there was someone else at the house, or, you know, an alternative explanation. I think that's a little bit different than the hard evidence. You're kind of implying that you have it, but you haven't checked it. I think we are assuming that the detective then believed that in the absence of a test, he doesn't have sufficient probable cause to proceed with the indictment, and I don't think that that is actually true. The detective might reasonably believe that even if that device is tested and doesn't show the video on it, there might be another explanation for it. There might be evidence that that video was deleted from, or there might be other evidence. Right, but you can usually find that on the computer, right? I don't think you always can find that on the computer. I fundamentally disagree with the belief that testing the device was absolutely conclusive like DNA evidence in this case. I just don't think it was. But we do think that while it's not to the level of DNA that at least apparently the report said, A, it isn't there, and B, I can't find any evidence that it ever was there, which perhaps existentially is all you can do. It's certainly relevant. I mean, I would agree with that, but I just don't put the conclusive effect to it. I see my time is up, Your Honors. I apologize for running over. Unless there's any more questions, I would just ask to affirm the disorder. No, thank you. Thank you, Your Honors. This is not all about the grand jury. The original complaint that we filed said nothing about the grand jury. It went to the central issue, which is why, when the authority sees in controlled possession of conclusively exonerating evidence, does a man sit in jail for 14 months before he's permitted to hire an expert that clears him? Okay, well, hold on for a minute. There's a question of whether it's conclusively exonerating, and I don't know whether you can answer that, and then you say, why is he there for 14 months before he's permitted to test it? I mean, whoever represented him could have asked to test it after a week, couldn't he? Well, that's something that we need to, and I'm sure will be explored in discovery when it comes to the issue of damages. I guess, I'm not sure whether I asked your colleague, but I thought I did. Maybe I didn't, as to whether somebody could have gotten it earlier than that, and they didn't affirmatively say they could have, but they say since the lawyer got it later, there was no indication he couldn't get it earlier. That's right, and I'm in much the same position. Presumably that lawyer, the state defender, whoever did it, that person was available to you. Yes. So that you could have gotten whatever statement he might have made. Pursuit, I mean, and my success as I've experienced in other cases in being able to do that, pursuit is questionable. Lawyers don't like being deposed without a subpoena. That's right, and so this isn't about the grand jury. The initial motivation of this case and the original complaint said nothing about the grand jury proceedings at all. The one paragraph that was added to our amended complaint addressed the grand jury proceedings and specifically alleged a material omission. This wasn't just an allegation of an omission or unreasonableness. This alleged a material omission. These allegations were far more specific. The omission was that they haven't tested the computer yet. Well, we've alleged that he was not considered a suspect, or at least they said that in the affidavit accompanying the search warrant, that he denied the download and that they had the evidence necessary to either prove or disprove his claim and they hadn't tested it yet. Okay, so I don't think they have to say the person, I don't think the grand jury needs to know that the defendant denied doing it. I mean, I can't see that that's actionable. And what was your first point? That in the affidavit accompanying the search warrant. Well, they didn't know because they didn't know which computer was going to have it. That's an issue of fact. I would suggest to Your Honor that's an issue of fact that is precisely the purpose of discovery to determine. Did they know he was not a suspect? Or was, as the district court found, that just an opinion? But that's not, you're saying it's a constitutional violation to not tell the grand jury that, or that it's a constitutional omission. That just doesn't sound right. I mean, the question is the totality of what you tell them. So, I mean, I really think your only argument is that it's a material, the one that you seem to be saying is that it's a material omission not to tell the grand jury that the evidence was seized but it was not yet searched to see whether it has evidence. Yes, that is our argument. And I will tell you that the Webb case illustrates just how important discovery is to that sort of thing because the proof adduced in that case that this court ultimately held was sufficient to not only permit discovery in support of the plaintiff's malicious prosecution claims, was evidence that was developed after the grand jury indictment that indicated that there was an issue of fact as to whether the investigating officer had lied to the grand jury. It wasn't even established that he had done so. It wasn't even established. And so we believe there is an omission. We believe there's a policy. I have another question because your time is up. Are you saying that your first complaint without the amendment that was focused on, that wasn't even focused on the grand jury testimony, was that sufficient? Your Honor, I believe it was. What was the constitutional violation? That the defendants, once they seized the exonerating evidence and then they didn't test it. That they seized the gun and didn't test it for fingerprints. That they had a photograph and didn't bother to look at it and recognize that the person in the photograph didn't look anything like the suspect. And so what is the constitutional violation? Well, Your Honor, it's a material. The constitutional violation is that there was never probable cause for his arrest, his incarceration, or his prosecution. So you're saying it undermined all the probable cause. That's correct, Your Honor. Thank you very much. Thank you.